## IN THE UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF KANSAS

| | |
|---|---|
| PHILOMINA SHALO, | |
| Plaintiff, | |
| v. | Case No.: 2:23-cv-2431 |
| EQUIFAX INFORMATION SERVICES, LLC, EXPERIAN INFORMATION SOLUTIONS, INC., and TRANSUNION LLC, | Jury Trial Demanded |
| Defendants. | |

## COMPLAINT SEEKING DAMAGES FOR VIOLATIONS OF THE
## FAIR CREDIT REPORTING ACT

### I.    INTRODUCTION

1. Plaintiff Philomina Shalo ("Plaintiff"), by and through her undersigned Counsel, brings this action to challenge the actions of defendants Equifax Information Services, Inc. ("Equifax"), Experian Information Solutions, Inc. ("Experian") and TransUnion LLC ("Transunion") (collectively "Defendants") with regard to erroneous reports of derogatory credit and debt information and Defendant's failure to properly investigate Plaintiff's dispute(s).

2. Defendants failed to properly investigate Plaintiff's disputes, damaging Plaintiff's creditworthiness.

3. While many violations are described below with specificity, this Complaint alleges violations of the statutes cited in their entirety.

4. Unless otherwise stated, all the conduct engaged in by Defendants took place in Kansas.

5.   Defendants committed each of these violations knowingly, willfully, and intentionally, and Defendants did not maintain procedures reasonably adapted to avoid any such violation.

6.   Through this Complaint, Plaintiff does not allege that any state court judgment was entered against anyone in error, and Plaintiff does not seek to reverse or modify any judgment of any state court.

7.   The United States Congress has found the banking system is dependent upon fair and accurate credit reporting.

8.   Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system.

9.   Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq*. ("FCRA"), to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.

10.   The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other information on consumers.

11.   The FCRA protects consumers through a tightly wound set of procedural protections from the material risk of harms that otherwise flow from inaccurate reporting.

12.   Thus, through the FCRA, Congress struck a balance between the credit industry's desire to base credit decisions on accurate information, and consumers' substantive right to protection from damage to reputation, shame, mortification, and the emotional distress that naturally follows from inaccurate reporting of a consumer's fidelity to his or her financial obligations.

## II.    JURISDICTION AND VENUE

13.    This Court has federal question jurisdiction because this case arises out of Defendant's violations of federal law—the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.*

14.    Jurisdiction of this Court arises pursuant to 28 U.S.C. § 1331.

15.    Venue is proper pursuant to 28 U.S.C. § 1391 as all the events and omissions giving rise to Plaintiff's claims occurred in Kansas.

16.    Defendants are subject to the Court's personal jurisdiction, as Defendants conduct business within Missouri, and Defendants' conduct giving rise to this action accrued in Kansas.

17.    Plaintiff is informed and believes and thereon alleges that all acts of corporate employees as hereinafter alleged were authorized or ratified by an officer, director or managing agent of the corporate employers.

18.    Plaintiff is informed and believes, and on that basis alleges, that at all times mentioned herein that Defendants each were the principal, agent or employee and in acting as such principal or within the course and scope of such employment or agency, took some part in the acts and omissions hereinafter set forth by reason of which Defendants are each liable to Plaintiff for the relief prayed for herein.

## III.    PARTIES

19.    Plaintiff, Philomina Shalo, is a citizen of the State of Kansas.

20.    Plaintiff is an adult individual and is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

21.    Defendant Equifax is an entity doing business in the State of Kansas.

22.    Defendant Equifax's registered agent address is: Corporation Service Company, 1100 SW Wanamaker Rd., Ste. 103, Topeka, KS 66604.

23.    Defendant Equifax regularly assembles and/or evaluates consumer credit information for the

purpose of furnishing consumer reports to third parties and use interstate commerce to prepare and/or furnish the reports.

24. Equifax is a "consumer reporting agency" as that term is defined by 15 U.S.C. §1681a(f).

25. Unless otherwise indicated, the use of Defendant Equifax's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of Equifax.

26. Defendant Experian is an entity doing business in the State of Kansas.

27. Defendant Experian's registered agent address is: CT Corporation System, 112 SW 7th St., Ste. 3C, Topeka, KS 66603.

28. Defendant Experian regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer reports to third parties and use interstate commerce to prepare and/or furnish the reports. Experian is a "consumer reporting agency" as that term is defined by 15 U.S.C. §1681a(f).

29. Unless otherwise indicated, the use of Defendant's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of Defendant.

30. Defendant Transunion is an entity doing business in the State of Kansas.

31. Defendant Transunion's registered agent address is: The Prentice-Hall Corporation, 1100 SW Wanamaker Rd., Ste. 103, Topeka, KS 66604.

32. Defendant Transunion regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer reports to third parties and use interstate commerce to prepare and/or furnish the reports.

33. Transunion is a "consumer reporting agency" as that term is defined by 15 U.S.C. §1681a(f).

34. Unless otherwise indicated, the use of Defendant Transunion's name in this Complaint

includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of Transunion.

## IV.    FACTUAL ALLEGATIONS

35.  Plaintiff opened a credit card with Discover Bank ("Discover") in or about October 2009 (the "Discover Account").

36.  Unfortunately, after a series of personal and professional events, Plaintiff defaulted on her payments on the Discover Account and the account was eventually charged off.

37.  Discover Bank filed a collections lawsuit against Plaintiff in the Circuit Court of Johnson County, Kansas on or about December 23, 2021 in a matter styled as *Discover Bank v. Philomina Shalo*, and assigned with case number 21LA09457 (the "State Court Lawsuit").

38.  The State Court Lawsuit was settled between Plaintiff and Discover Bank through the entry of a Journal Entry of Judgment which contained a stay of execution on or about May 23, 2022 (the "Consent Judgment").

39.  Pursuant to the terms of the Consent Judgment, Discover agreed that the $16,883.58 debt associated with the Discover Account would be settled upon receipt of 1 payment of $224, then 47 consecutive payments of $208, made monthly to Discover Bank by Plaintiff, beginning June 30, 2022 and continuing thereafter until the final payment had been received (the "Settlement Payments").   The total to be paid pursuant to the Consent Judgment was $10,000.

40.  Following entry of the Consent Judgment in the Collection Lawsuit, Plaintiff has made all required Settlement Payments on time.

41.  Once all agreed payments are made, Discover will consider the account to be paid in full for less than the full balance.

42.  Plaintiff began making her payments pursuant to the Consent Judgment in June 2022, and

has continued to make timely payments thereafter.

43. After making his Settlement Payments for a number of months, Plaintiff accessed her Experian, Equifax, and Transunion credit reports on or about February 10, 2023.

44. Upon review of those reports, Plaintiff was upset to learn that Experian, Equifax, and Transunion were all failing to report the Settlement Payments Plaintiff was making to Discover Bank.

45. Instead, Experian's February 14, 2023 credit report erroneously stated that $0 had been paid towards the Discover Account each month since Plaintiff began making the Settlement Payments.

46. Further, Experian was reporting that the Discover Account was past due in the amount of $15,411 despite the fact that Plaintiff had made all required Settlement Payments.

47. Experian's reporting derogatory information was inaccurate, incomplete, and/or materially misleading in that Experian made it appear as though Plaintiff was failing to make any payments towards the Discover Account when in fact she was.

48. Likewise, upon viewing her February 10, 2023 Equifax credit report, Plaintiff was upset to find that the credit report erroneously reported "CO" (charge off) instead of payments in the payment history section for every month after the Collection Lawsuit had been settled, and further failed to report otherwise that any of the Settlement Payments that had been made by Plaintiff.

49. Further, Equifax was reporting that the Discover Account was past due in the amount of $15,411 despite the fact that Plaintiff had made all required Settlement Payments.

50. Equifax's reporting derogatory information was inaccurate, incomplete and/or materially misleading in that Equifax made it appear as though Plaintiff was failing to make any payments towards the Discover Account when in fact she was.

51.  And finally, Plaintiff's February 10, 2023 Transunion credit report contained similar erroneous reports. Specifically, Plaintiff's February 10, 2023 Transunion credit report erroneously failed to report any of Plaintiff's monthly Settlement Payments paid towards the Discover Account.

52.  Further, Transunion was reporting that the Discover Account was past due in the amount of $15,411 despite the fact that Plaintiff had made all required Settlement Payments.

53.  Transunion's reporting derogatory information was inaccurate, incomplete, and/or materially misleading in that Transunion made it appear as though Plaintiff was failing to make any payments towards the Discover Account when in fact she was.

## A.  METRO 2 REPORTING STANDARDS

62.  Defendants' inaccurate reporting did not comply with the Consumer Data Industry Association's Metro 2 reporting standards, which provides guidance for credit reporting and FCRA compliance.

63.  The Consumer Data Industry Association ("CDIA") publishes the Metro 2 ("Metro 2 Format") reporting standards to assist furnishers with their compliance requirements under the FCRA.

64.  The Metro 2 Format is designed to assist data furnishers and consumer reporting agencies comply with the FCRA, the Fair Credit Billing Act ("FCBA"), and the Equal Credit Opportunity Act ("ECOA").

65.  Further, the Metro 2 Format is designed to allow monthly reporting of the most accurate and complete information on any given consumer's credit history.

66.  On information and belief, Defendants adopted the Metro 2 Format and at all times relevant implemented the Metro 2 Format as an integral aspect of its duties under the FCRA to have in place adequate and reasonable policies and procedures to handle investigations of disputed

information.

67. Despite Metro 2 Format's instructions, Defendants failed to conform to the Metro 2 Format when reporting on the Discover Account.

68. The Metro 2 Format requires that inaccurately reported accounts be deleted.

69. In the instant matter, the failure of Defendants to report Plaintiff's monthly payments resulted in factually inaccurate reporting of the Discover Account.

70. To this end, the adverse reporting on Plaintiff's credit reports described herein departed from the credit industry's own reporting standards and was not only inaccurate, but also materially misleading under the CDIA's standards as well.

**B. THE IMPACT OF INACCURATE OR MISLEADING INFORMATION ON CONSUMER REPORTS**

71. A "Consumer Report", as defined by 15 U.S.C. § 1681a(d)(1), impacts a consumer's eligibility for:

    i.   credit or insurance to be used primarily for personal, family, or household purposes;

    ii.  employment purposes; or

    iii.  any other purpose authorized under section 1681b.

72. As a result, the information held within a consumer report impacts not only a consumer's credit worthiness, rating, and capacity, but also the character, general reputation, and personal characteristics of the consumer.

73. A Federal Trade Commission study mandated by Congress on credit report accuracy ("FTC Study") found that one in five consumers had an error on at least one of their three major credit reports (Equifax, Equifax, and Trans Union), with some consumers experiencing inaccuracies that can depress credit scores by over 100 points. *See* https://www.ftc.gov/news-events/press-releases/2013/02/ftc-study-five-percent-

consumers-had-errors-their-credit-reports.

74. The FTC Study found that the types of errors on consumer reports could lead to consumers paying more for products such as auto loans and insurance. *See* https://www.ftc.gov/news-events/press-releases/2013/02/ftc-study-five-percent-consumers-had-errors-their-credit-reports.

## C. CREDIT SCORING

75. The Fair Isaac Corporation credit risk scoring system, commonly referred to as "FICO", is the leading credit scoring system and utilizes data reported by credit reporting agencies. *See* https://www.myfico.com/credit-education/credit-scores/.

76. Defendants' departures from the credit industry's own standards have caused Plaintiff to suffer from reduced FICO credit scores.

77. The Fair Isaac Corporation uses the data in consumer reports to calculate consumers' credit scores (also known as credit risk scores). *Id*. The term "credit score" is a numerical value or a categorization derived from a statistical tool or modeling system used by a person who makes or arranges a loan to predict the likelihood of certain credit behaviors, including default. *See* http://files.consumerfinance.gov/f/201210_cfpb_supervision-and-examination-manual-v2.pdf.

78. FICO scores are calculated from five main categories of credit data in a consumer's credit report. Those categories, and their weighted values, are as follows: payment history accounts for 35% of a consumer's FICO score; debt/amounts owed accounts for 30% of a consumer's FICO score; age/length of credit history accounts for 15% of a consumer's FICO score; new credit/recent inquiries accounts for 10% of a consumer's FICO score; and mix of accounts/types of credit accounts for 10% of a consumer's FICO score. *See* https://www.myfico.com/credit-education/whats-in-your-credit-score/.

79. Debts/amounts owed is one of the most important aspects of a consumer's credit score because it shows how the consumer has managed their finances, including what liabilities the consumer still has. Credit history is also very important, as it demonstrates how long the consumer has been managing their accounts, when their last payments were made, and any recent charges. *See* https://www.transunion.com/credit-score.

80. The cost of credit (e.g., interest rates, fees, etc.), the availability of credit, ratings for insurance products, and even unsolicited credit offers, such as the opportunity to refinance a mortgage at a lower interest rate, extended financing periods and lower rate auto loans, and even zero-percent financing credit offers for in-store credit lines, are all, by and large, driven by a consumer's credit score.

81. Inaccurate, incomplete, and/or materially misleading credit reporting very often results in a lower FICO and other credit scoring model scores, and thus higher costs of credit, diminished opportunity, and less purchasing power for consumers.

82. Incorrectly reporting that Plaintiff was making no monthly payments on the Discover Account made it appear as though Plaintiff was not taking affirmative steps to resolve this debt when she was, depriving her of the positive and recuperative credit impact that correct payment history reporting would provide her.

83. Since a consumer's payment history has the largest impact on a consumer's credit score, Plaintiff was deprived of the positive reporting that could have otherwise shown her payment history on the Discover Account and increased her credit score.

84. There is no established rule or threshold for classifying the significance of a credit score change as minor or major because the impact of a change in score is dependent on the current score. For example, a one-point change in credit score that moves the consumer from one risk tier to the next may have a large impact on the consumer's access to credit

or the products and rates the consumer is able to secure.

85. Consistent with FTC study, the Fair Isaac Corporation states that inaccurate or incorrect information on a consumer's credit report can hurt their score. *See* https://www.myfico.com/credit-education/questions/fix-errors-on-credit-report/.

**D.    EXPERIAN**

### a.    EXPERIAN'S INACCURATE REPORTING OF THE DISCOVER ACCOUNT

86. Upon a review of Plaintiff's Experian credit report, dated February 10, 2023, Plaintiff discovered that Experian was reporting $0 had been paid towards the Discover Account each month since Plaintiff had entered into the Consent Judgment.

87. This was being reported despite the fact that Plaintiff was faithfully making monthly payments pursuant to the Consent Judgment.

88. Further, Experian was reporting a status that indicated the Discover Account was $15,411 past due as of January 2023, despite the fact that the Settlement Payments towards a lower debt amount were being made as agreed and the Discover Account's status had changed accordingly.

89. It was therefore inaccurate, incomplete, and/or materially misleading for Experian to report the Discover Account as described herein.

90. Upon seeing these inaccurate reportings regarding the Discover Account on her Experian credit report, Plaintiff was confused about the status of debt, which caused her to suffer from frustration, anxiety, stress, and emotional distress.

### b.    PLAINTIFF'S DISPUTE TO EXPERIAN

91. On or after March 10, 2023, Plaintiff disputed Experian's reporting of the Discover Account pursuant to 15 U.S.C. § 1681i by notifying Experian, in writing, of the incorrect and inaccurate information (the "Experian Dispute").

92. The Experian Dispute sent to Experian requested the above inaccurate and incorrect informationinformation be updated, modified, or corrected as to the Discover Account.

93. Enclosed with the Experian Dispute were copies of the Consent Judgment from the Collection lawsuit, as well as proof of Plaintiff's Settlement Payments.

94. Experian was required to conduct a reinvestigation into the Discover Account on Plaintiff's consumer report pursuant to 15 U.S.C. § 1681i.

95. Experian was required to send notice of the Experian Dispute to Discover Bank pursuant to 15 U.S.C. § 1681i(a)(2).

96. A reasonable investigation by Experian would have indicated that they were reporting the Discover Account inaccurately on Plaintiff's Experian Credit Report.

97. Instead, Experian continued to report the Discover Account in an inaccurate, incomplete, and/or materially misleading way.

c. **THE CONTINUED INACCURATE REPORTING OF THE DISCOVER ACCOUNT ON PLAINTIFF'S EXPERIAN CREDIT REPORT**

98. In a subsequent Experian credit report dated April 27, 2023 following Plaintiff's dispute, Experian failed to remove orinformatione reported information regarding the Discover Account from Plaintiff's Experian Credit Report.

99. Instead, in the April 27, 2023 Experian Credit Report, Experian continued to report inaccurate, incompleinformationmaterially misleading information on the Discoinformation by failing to include pertinent information regarding Plaintiff's payment history under the Settlement Agreement.

100. Specifically, Experian and Discover Bank continued to report $0 had been paid each month since Plaintiff began her payments pursuant to the Consent Judgment, and they continued to report the Discover Account as past due.

101. Experian's reporting was inaccurate because the result of their reporting was to make it appear as if Plaintiff was failing to make monthly payments on the Discover Account when she was in fact making payments, and because the reporting created the appearance that the remaining debt associated with the Discover Account was much higher than Plaintiff understood it to be.

102. These reportings caused Plaintiff confusion regarding the status of the Discover Account on her Experian credit report, and stress, anxiety, and emotional distress over the fact that her efforts to resolve the Discover Account had been made in vain and that she still owed much more than she actually did on the Consent Judgment.

103. As of September 21, 2023, the errors described above on Plaintiff's Experian credit report have not been corrected.

104. Instead, Experian made the same inaccurate, incomplete, and/or materially misleading reportings described above, along with a statement: $16,883 written off.

105. $16,883 was not written off from the Discover Account, as Plaintiff was paying as agreed on her settlement.

**E.   EQUIFAX**

    a.   **EQUIFAX'S INACCURATE REPORTING OF THE DISCOVER ACCOUNT**

106. Upon a review of Plaintiff's Equifax credit report, dated February 10, 2023, Plaintiff discovered that Equifax was failing to report any of his Settlement Payments made towards the Discover Account in each month since Plaintiff had entered into the Consent Judgment, and that the Discover Account carried a balance and past due balance in the amount of $15,411.

107. This was being reported despite the fact that Plaintiff was faithfully making monthly payments pursuant to the Settlement Agreement, and despite the fact that the Settlement

Payments towards a lower debt amount were being made as agreed and the Discover Account's status had changed accordingly.

108. It was therefore inaccurate, incomplete, and/or materially misleading for Equifax to report the Discover Account as described herein.

109. Upon seeing these inaccurate reportings regarding the Discover Account on her Equifax credit report, Plaintiff was confused about the status of debt, which caused her to suffer from frustration, anxiety, stress, and emotional distress.

    b. **PLAINTIFF'S DISPUTE TO EQUIFAX**

110. On or after March 10, 2023, Plaintiff disputed Equifax's reporting of the Discover Account pursuant to 15 U.S.C. § 1681i by notifying Equifax, in writing, of the incorrect and inaccurate information (the "Equifax Dispute").

111. The Equifax Dispute sent to Equifax requested the above inaccurate and incorrect derogatory information be updated, modified, or corrected as to the Discover Account.

112. Enclosed with the Equifax Dispute were copies of the Settlement Agreement, as well as proof of Plaintiff's Settlement Payments.

113. Equifax was required to conduct a reinvestigation into the Discover Account on Plaintiff's consumer report pursuant to 15 U.S.C. § 1681i.

114. Equifax was required to send notice of the Equifax Dispute to Discover Bank pursuant to 15 U.S.C. § 1681i(a)(2).

115. A reasonable investigation by Equifax would have indicated that they were reporting the Discover Account inaccurately on Plaintiff's Equifax Credit Report.

116. Instead, Equifax continued to report the Discover Account in an inaccurate, incomplete, and/or materially misleading way.

c.    THE CONTINUED INACCURATE REPORTING OF THE DISCOVER ACCOUNT ON PLAINTIFF'S EQUIFAX CREDIT REPORT

117.    In a subsequent Equifax credit report dated April 27, 2023, Equifax failed to remove or correct the reported information regarding the Discover Account from Plaintiff's Equifax Credit Report.

118.    Instead, in the April 27, 2023 Equifax Credit Report, Equifax continued to report inaccurate, incomplete, and/or materially misleading information on the Discover Account by failing to include pertinent information regarding Plaintiff's payment history under the Settlement Agreement.

119.    Specifically, Equifax continued to report that Plaintiff was past due and likewise failed to report any of Plaintiff's Settlement Payments.

120.    Equifax's reporting was inaccurate because the result of their reporting was to make it appear as if Plaintiff was failing to make monthly payments on the Discover Account when she was in fact making payments, and because the reporting created the appearance that the remaining debt associated with the Discover Account was much higher than Plaintiff understood it to be.

121.    These reportings caused Plaintiff confusion regarding the status of the Discover Account on her Equifax credit report, and stress, anxiety, and emotional distress over the fact that her efforts to resolve the Discover Account had been made in vain and that she still owed much more than she actually did on the Consent Judgment.

122.    As of September 21, 2023, the errors described above on Plaintiff's Equifax credit report have not been corrected.

F.    **TRANSUNION**

a.    **TRANSUNION'S INACCURATE REPORTING OF THE DISCOVER ACCOUNT**

123.    Upon a review of Plaintiff's Transunion credit report, dated February 10, 2023, Plaintiff

discovered that Transunion was reporting that the Discover Account was past due in the

amount of $15,411, and that Transunion was further failing to report any of Plaintiff's

Settlement Payments.

124.    This was being reported despite the fact that Plaintiff was faithfully making monthly

payments pursuant to the Settlement Agreement.

125.    It was therefore inaccurate, incomplete, and/or materially misleading for Transunion to

report the Discover Account as described.

126.    Upon seeing these inaccurate reportings regarding the Discover Account on her Transunion

credit report, Plaintiff was confused about the status of debt, which caused her to suffer

from frustration, anxiety, stress, and emotional distress.

b.    **PLAINTIFF'S DISPUTE TO TRANSUNION**

127.    On or after March 10, 2023, Plaintiff disputed Transunion's reporting of the Discover

Account pursuant to 15 U.S.C. § 1681i by notifying Transunion, in writing, of the incorrect

and inaccurate information (the "Transunion Dispute").

128.    The Transunion Dispute sent to Transunion requested the above inaccurate and incorrect

derogatory information be updated, modified, or corrected as to the Discover Account.

129.    Enclosed with the Transunion Dispute were copies of the Settlement Agreement, as well

as proof of Plaintiff's Settlement Payments.

130.    Transunion was required to conduct a reinvestigation into the Discover Account on

Plaintiff's consumer report pursuant to 15 U.S.C. § 1681i.

131.    Transunion was required to send notice of the Transunion Dispute to Discover Bank

pursuant to 15 U.S.C. § 1681i(a)(2).

132.  A reasonable investigation by Transunion would have indicated that they were reporting the Discover Account inaccurately on Plaintiff's Transunion Credit Report.

133.  Instead, Transunion continued to report the Discover Account in an inaccurate, incomplete, and/or materially misleading way.

c.  **THE CONTINUED INACCURATE REPORTING OF THE DISCOVER ACCOUNT ON PLAINTIFF'S TRANSUNION CREDIT REPORT**

134.  In a subsequent Transunion credit report dated September 21, 2023, Transunion failed to remove or correct the reported information regarding the Discover Account from Plaintiff's Transunion Credit Report.

135.  Instead, in the September 21, 2023 Transunion Credit Report, Transunion continued to report inaccurate, incomplete, and/or materially misleading information on the Discover Account by failing to report any of Plaintiff's Settlement Payments, and by reporting the Discover Account was past due in the amount of $13,955.

136.  Transunion continued to report that Plaintiff was past due and likewise failed to report any of Plaintiff's Settlement Payments.

137.  Transunion's reporting was inaccurate because the result of their reporting was to make it appear as if Plaintiff was failing to make monthly payments on the Discover Account when she was in fact making payments, and because the reporting created the appearance that the remaining debt associated with the Discover Account was much higher than Plaintiff understood it to be.

138.  These reportings caused Plaintiff confusion regarding the status of the Discover Account on her Transunion credit report, stress, anxiety, and emotional distress over the fact that his efforts to resolve the Discover Account had been made in vain and that he still owed

much more than she actually did on the Consent Judgment.

**G.  DEFENDANTS' VIOLATIONS OF THE FCRA AND PLAINTIFF'S DAMAGES**

139.  It is inaccurate to report that an account carries a present Charge Off status when the account has in fact been settled pursuant to a mutually agreed settlement.

140.  It is inaccurate to report that no monthly payments are being paid each month on an account when the consumer is in fact making $208 monthly payments.

141.  It is inaccurate to report than an account is past due when payments are being faithfully made pursuant to a mutually agreed settlement.

142.  As evidenced by Equifax, Experian, and Transunion's reporting of inaccurate payment history and charge off status of the Discover Account after being advised otherwise, Equifax, Experian, and Transunion failed to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates as required by and in violation of 15 U.S.C. § 1681e(b).

143.  As evidenced by the inaccurate re-reporting after Plaintiff sent Equifax, Experian, and Transunion detailed disputes identifying the inaccurate information related to the Discover Account, Transunion, Equifax, and Experian, upon receipts of Plaintiff's disputes, failed to conduct an investigation or reinvestigation with respect to the disputed information as required by 15 U.S.C. § 1681i.

144.  Equifax, Experian, and Transunion failed to review all relevant information provided by Plaintiff in her disputes, as required by and in violation of 15 U.S.C. § 1681i.

145.  Due to Equifax, Experian, and Transunion's failure to reasonably investigate, Equifax, Experian, and Transunion further failed to correct and update Plaintiff's information as required by 15 U.S.C. § 1681i, thereby causing continued reporting of inaccurate information in violation of 15 U.S.C. § 1681i.

146.  Equifax, Experian, and Transunion's continued inaccurate and negative reporting of the Discover Account in light of their knowledge of the actual errors was willful. Plaintiff is, accordingly, eligible for statutory damages under the FCRA.

147.  Reckless disregard of a requirement of the FCRA qualifies as a willful violation of the FCRA within the meaning of section 1681n(a). *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 71 (2007).

148.  Based upon Equifax, Experian, and Transunion's knowledge that Plaintiff was making monthly payments towards to the Discover Account pursuant to the terms of the Consent Judgment, even if Equifax, Experian, and Transunion could claim they did not willfully violate the FCRA, their conduct was at the very least done with reckless disregard of their obligations under 15 U.S.C. § 1681e(b), and/or 15 U.S.C. § 1681i.

149.  Also as a result of Equifax, Experian, and Transunion's continued inaccurate and negative reporting, Plaintiff has suffered actual damages, including, without limitation, fear of credit denials, out-of-pocket expenses in challenging Equifax, Experian, and Transunion's inaccurate reporting, damage to Plaintiff's creditworthiness, damage to Plaintiff's credit reputation, emotional distress, and actual credit denials.

150.  By inaccurately reporting account information, Equifax, Experian, and Transunion's acts and omissions have resulted in the illegitimate suppression of Plaintiff's FICO credit score and other credit rating model scores.

151.  The adverse effect on Plaintiff's credit score places Plaintiff at the material risk of being denied credit or receiving less favorable credit terms than she otherwise would.

152.  Courts have regularly held that allegations of lower credit scores, taken as true, are sufficient to allege a concrete injury-in-fact for the purposes of standing under Article III. *Pedro v. Equifax, Inc*., 868 F.3d 1275 (11th Cir. 2017) ("[H]er credit score dropped 100

points as a result of the challenged conduct. Because Pedro alleged that she suffered an injury in fact, she has standing to pursue her complaint."); *Diedrich v. Ocwen Loan Servicing, LLC*, 839 F.3d 583 (7th Cir. 2016) (standing where Plaintiff alleged that they "have suffered damage to their credit and been forced to pay Ocwen greater payments and a higher interest rate"); *Santangelo v. Comcast Corp.*, 162 F. Supp. 3d 691 (N.D. Ill. 2016) ("a depleted credit score is sufficient to constitute an injury-in-fact for the purposes of establishing Article III standing"); *Binns v. Ocwen Loan Servicing, LLC*, No. 14-01764, 2015 U.S. Dist. LEXIS 132743, 2015 WL 5785693, at *9 (S.D. Ind. Sept. 30, 2015) ("injuries to Plaintiff's credit scores and reputations were considered intangible harms"); *Rothman v. U.S. Bank Nat'l Ass'n,* No. 13-03381, 2014 U.S. Dist. LEXIS 141100, 2014 WL 4966907, at *5 (N.D. Cal. Oct. 3, 2014) ("Injury to a credit score is sufficient to constitute 'actual damages'"); *Green v. RentGrow, Inc.*, No. 2:16cv421, 2016 U.S. Dist. LEXIS 166229 ("A decrease in credit score may still establish an injury in fact sufficient to confer standing"); *Adams v. Fifth Third Bank*, No. 3:16-CV-00218-TBR, 2017 U.S. Dist. LEXIS 18932 (W.D. Ky. Feb. 9, 2017) ("Plaintiff's allegations of lower credit scores … are sufficient to allege a concrete injury-in-fact for the purposes of standing under Article III."); *Coulbertson v. Equifax Info. Sols., Inc.*, No. 16-cv-05672-RS, 2017 U.S. Dist. LEXIS 69484 (N.D. Cal. Mar. 24, 2017) ("At a minimum, Coulbertson has alleged a sufficient injury-in-fact through his claim that his credit score suffered as a result of the credit report she disputes").

153.   Creating the false impression that Plaintiff was not attending to her debts in a responsible manner created and/or exacerbated a material risk that Plaintiff would be denied credit, receive less favorable credit treatment than Plaintiff otherwise would, or receive other unfavorable treatment than Plaintiff otherwise would, from any viewer of Plaintiff's credit

report that is engaged in judgment-based lending.

154. Plaintiff's Equifax, Experian, and Transunion credit reports were published to third parties while the inaccurate and/or materially misleading information discussed in this Complaint was present on each Defendants' respective reports.

155. Equifax, Experian, and Transunion thus caused a defamation-type harm upon Plaintiff.

156. By inaccurately reporting account information after notice and confirmation of its errors, Equifax, Experian, and Transunion failed to take the appropriate measures as required under 15 U.S.C. § 1681i.

**FIRST CAUSE OF ACTION**
**The Fair Credit Reporting Act**
**15 U.S.C. § 1681 *et seq*. (FCRA)**

157. Plaintiff repeats, re-alleges, and incorporates by reference all above paragraphs.

158. The foregoing acts and omissions constitute numerous and multiple violations of the FCRA.

159. Equifax, Experian, and Transunion's violations of the FCRA as alleged above, include, but are not limited to 15 U.S.C. §§ 1681e(b), and/or 1681i.

160. As a result of each negligent violation of the FCRA, Plaintiff is entitled to actual damages from Equifax, Experian, and Transunion, for each of their individual harms caused upon Plaintiff, pursuant to 15 U.S.C. § 1681o(a)(1); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o(a)(2).

161. As a result of each and every willful violation of the FCRA, Plaintiff is entitled to actual damages or statutory damages of not less than $100.00 and not more than $1,000.00, for each of their individual harms caused upon Plaintiff, pursuant to 15 U.S.C. §1681n(a)(1)(A); punitive damages as the court may allow, pursuant to 15 U.S.C. §1681n(a)(2); and reasonable attorney's fees and costs pursuant to 15 U.S.C. §1681n(a)(3) from Equifax.

**Request for Jury Trial**

162.  Plaintiff is entitled to, and demands, a trial by jury.

**Prayer For Relief**

Wherefore, Plaintiff respectfully requests the Court grant Plaintiff the following relief against Equifax, Experian, and Transunion:

1.    A declaratory judgment that Equifax, Experian, and Transunion's actions violated the FCRA;

2.    Plaintiff's actual damages from Equifax, Experian, and Transunion for harms resulting from the FCRA;

3.    Statutory damages of not less than $100.00 and not more than $1,000.00 to Plaintiff, pursuant to 15 U.S.C. § 1681n(a)(1), from Equifax, Experian, and Transunion;

4.    Punitive damages against Equifax, Experian, and Transunion, pursuant to 15 U.S.C. §1681n(a)(2);

5.    An award of costs of litigation and reasonable attorney's fees from Equifax, Experian, and Transunion, pursuant to 15 U.S.C. § 1681o(a)(2) and/or 15 U.S.C. § 1681n(a)(3); and

6.    Any other relief the Court may deem just and proper.

Dated: 09/22/2023                              Respectfully submitted,

/s/ James R. Crump
James R. Crump #25363
Ryan M. Callahan #78704
**Callahan Law Firm, LLC**
222 W. Gregory Blvd., Suite 210
Kansas City, MO 64114-1138
Ph: 816-822-4041
james@callahanlawkc.com
ryan@callahanlawkc.com
Attorneys for Plaintiff